## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LOUIS SCARANTINO, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SEVCON, INC., MATTHEW GOLDFARB, MATTHEW BOYLE, PAUL O. STUMP, DAVID R. A. STEADMAN, RYAN J. MORRIS, WALTER M. SCHENKER, WILLIAM KETELHUT, GLENN J. ANGIOLILLO, MARTIN G. SCHORR, BORGWARNER INC., and SLADE MERGER SUB INC.,<br><br>Defendants. | Case No. 1:17-cv-11580<br><br>JURY TRIAL DEMANDED<br><br><u>CLASS ACTION</u> |

## **COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### **NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on July 17, 2017 (the "Proposed Transaction"), pursuant to which Sevcon, Inc. ("Sevcon" or the "Company") will be acquired by BorgWarner Inc. ("Parent") and Slade Merger Sub Inc. ("Merger Sub," and together with Parent, "BorgWarner").

2. On July 14, 2017, Sevcon's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with BorgWarner. Pursuant to the terms of the Merger Agreement, shareholders of Sevcon will receive $22.00 in cash for each share of Sevcon common stock.

3.      On August 8, 2017, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Sevcon common stock.

9.      Defendant Sevcon is a Delaware corporation and maintains its principal executive offices at 155 Northboro Road, Southborough, MA 01772. Sevcon's common stock is traded on the NasdaqCM under the ticker symbol "SEV."

10. Defendant Matthew Goldfarb ("Goldfarb") has served as a director and Chairman of the Board of Sevcon since December 2016.

11. Defendant Matthew Boyle ("Boyle") has served as a director, President, and Chief Executive Officer ("CEO") of Sevcon since November 1997.

12. Defendant Paul O. Stump ("Stump") is a director of Sevcon.

13. Defendant David R. A. Steadman ("Goodman") is a director of Sevcon, and previously served as Chairman of the Board of Sevcon from January 2005 through January 2013.

14. Defendant Ryan J. Morris ("Morris") is a director of Sevcon, and previously served as Chairman of the Board of Sevcon from July 2016 through December 2016.

15. Defendant Walter M. Schenker ("Schenker") is a director of Sevcon, and previously served as Chairman of the Board of Sevcon from February 2016 through July 2016.

16. Defendant William Ketelhut ("Ketelhut") is a director of Sevcon, and previously served as Chairman of the Board of Sevcon from January 2013 through December 2015.

17. Defendant Glenn J. Angiolillo ("Angiolillo") is a of Sevcon.

18. Defendant Dr. Marvin G. Schorr ("Schorr") is a director of Sevcon, and previously served as Chairman of the Board of Sevcon from January 1988 through January 2005.

19. The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

20. Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

21. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action as a class action on behalf of himself and the other

3

public stockholders of Sevcon (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

23. This action is properly maintainable as a class action.

24. The Class is so numerous that joinder of all members is impracticable. As of July 11, 2017, there were approximately 5,689,361 shares of Sevcon common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

25. Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

26. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

27. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

28. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## **SUBSTANTIVE ALLEGATIONS**

*Background of the Company and the Proposed Transaction*

29. Sevcon is a global supplier of control and power solutions for zero-emission, electric, and hybrid vehicles.

30. The Company's products control on- and off-road vehicle speed and movement, integrate specialized functions, optimize energy consumption, and help reduce air pollution.

31. Sevcon's Bassi Division produces battery chargers for electric vehicles; power management and uninterrupted power source systems for industrial, medical, and telecom applications; and electronic instrumentation for battery laboratories.

32. The Company supplies customers from its operations in the U.S., U.K., France, Germany, Italy, China, and the Asia Pacific region, as well as through an international dealer network.

33. On July 14, 2017, the Board caused the Company to enter into the Merger Agreement, pursuant to which Sevcon will be acquired by BorgWarner.

34. The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.

35. Further, the Company must promptly advise BorgWarner of any proposals or inquiries received from other parties.

36. Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under

extremely limited circumstances, and grants BorgWarner a "matching right" with respect to any "Superior Proposal" made to the Company.

37. Further locking up control of the Company in favor of BorgWarner, the Merger Agreement provides for a "termination fee" payable by the Company to BorgWarner if the Individual Defendants cause the Company to terminate the Merger Agreement.

38. By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

39. The consideration to be provided to plaintiff and the Class in the Proposed Transaction is inadequate.

40. Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

41. Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

42. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

43. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

44. First, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor, Rothschild Inc. ("Rothschild").

6

45. With respect to Sevcon's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal value of Sevcon; (ii) the inputs and assumptions underlying the range of illustrative after-tax discount rates of 14.00% to 16.00%; (iii) Rothschild's basis for selecting the illustrative range of growth rates in perpetuity of 3.0% to 5.0%; (iv) the estimated amount of net debt of Sevcon; and (v) the number of fully diluted shares of common stock of Sevcon outstanding as provided by Sevcon management.

46. With respect to Rothschild's *Selected Public Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for the companies observed by Rothschild in the analysis.

47. With respect to Rothschild's analysis of premiums paid, the Proxy Statement fails to disclose the transactions observed by Rothschild in the analysis and the premiums paid in such transactions.

48. With respect to Rothschild's analysis of the future price per share of common stock of Sevcon, the Proxy Statement fails to disclose: (i) Rothschild's basis for applying illustrative EV/EBIT multiples ranging from 12.0x to 15.0x to estimated EBIT of Sevcon; (ii) the estimated net debt of Sevcon; (iii) the number of fully diluted shares of common stock of Sevcon outstanding as provided by Company management; and (iv) the inputs and assumptions underlying the discount rate of 17.0%.

49. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

50. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background

of the Merger"; (ii) "Recommendation of the Board and Reasons for the Merger"; (iii) "Fairness Opinion of Financial Advisor"; and (iv) "Certain Financial Forecasts."

51. Second, the Proxy Statement fails to disclose whether any nondisclosure agreements executed by Sevcon and the prospective bidders contained standstill and/or "don't ask, don't waive" provisions that are or were preventing those counterparties from submitting superior offers to acquire the Company.

52. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

53. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; and (ii) "Recommendation of the Board and Reasons for the Merger."

54. Third, the Proxy Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

55. Specifically, the Registration Statement fails to disclose the timing and nature of all communications regarding future employment and directorship of Sevcon's officers and directors, including who participated in all such communications.

56. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

57. The omission of this material information renders the Proxy Statement false and

misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Recommendation of the Board and Reasons for the Merger"; and (iii) "Interests of the Directors and Executive Officers of Sevcon in the Merger."

58. Fourth, the Proxy Statement omits material information regarding potential conflicts of interest of Rothschild.

59. For example, the Proxy Statement fails to disclose the nature of the past services Rothschild provided to BorgWarner and its affiliates, as well as the amount of compensation received by Rothschild for all past services provided to BorgWarner and its affiliates.

60. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

61. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Recommendation of the Board and Reasons for the Merger"; and (iii) "Fairness Opinion of Financial Advisor."

62. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Sevcon's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Sevcon**

63. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material

facts necessary to make the statements therein not materially false or misleading. Sevcon is liable as the issuer of these statements.

65. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

66. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

67. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

68. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

69. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

70. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and BorgWarner

71. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72. The Individual Defendants and BorgWarner acted as controlling persons of Sevcon within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Sevcon and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

73. Each of the Individual Defendants and BorgWarner was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

74. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Proxy Statement.

75. BorgWarner also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

76. By virtue of the foregoing, the Individual Defendants and BorgWarner violated Section 20(a) of the 1934 Act.

77. As set forth above, the Individual Defendants and BorgWarner had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated:  August 22, 2017 **MATORIN LAW OFFICE, LLC**

By: */s/ Mitchell J. Matorin*

**OF COUNSEL:** Mitchell J. Matorin (BBO# 649304)
18 Grove Street, Suite 5
**RIGRODSKY & LONG, P.A.** Wellesley, MA 02482
Brian D. Long (781) 453-0100
Gina M. Serra
2 Righter Parkway, Suite 120 *Attorneys for Plaintiff*
Wilmington, DE 19803
(302) 295-5310

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(484) 324-6800

13